2020 IL App (1st) 190940-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
July 21, 2020

No. 1-19-0940

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| CHRISTOPHER SMITH and MICHELLE SMITH, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of |
| STERLING NATIONAL BANK, as successor in interest | ) | Cook County |
| by merger to Astoria Federal Savings and Loan | ) | |
| Association d/b/a Astoria Bank, WILMINGTON | ) | No. 17 L 11490 |
| SAVINGS FUND SOCIETY, FSB d/b/a Christiana Trust, | ) | |
| not in its individual capacity but solely as Trustee for | ) | The Honorable |
| BCAT 2014-11TT, DOVENMUEHLE MORTGAGE, | ) | Thomas R. Mulroy, Jr., |
| INC., SELENE FINANCE, LP, PIERCE & | ) | Judge Presiding. |
| ASSOCIATES d/b/a McCalla Raymer Liebert Pierce, | ) | |
| LLC, and MARINOSCI LAW GROUP, P.C., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Sterling National Bank, Defendant-Appellee). | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court properly dismissed plaintiffs' amended complaint, where damages sought in breach of contract counts consisted of attorney fees incurred in earlier litigation with defendant, and consumer fraud counts were filed outside the statute of limitation.

¶ 2    The plaintiffs-appellants, Christopher Smith and Michelle Smith, appeal from the trial court's dismissal of the counts of their amended complaint directed against the defendant-appellee, Sterling National Bank, as successor in interest by merger to Astoria Federal Savings and Loan Association d/b/a Astoria Bank (defendant Sterling). We affirm the judgment of the trial court.

¶ 3                              I. BACKGROUND

¶ 4    This appeal involves the dismissal of five counts of the plaintiffs' amended complaint against defendant Sterling, two for breach of contract and three for violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)) (Consumer Fraud Act). The plaintiffs' claims arise out of an earlier case, in which defendant Sterling's predecessor in interest, Astoria Bank, filed a mortgage foreclosure action against the plaintiffs in Lake County, Illinois (Mortgage Foreclosure Case). In this case, the plaintiffs allege that Astoria Bank breached its contract with the plaintiffs by initiating the Mortgage Foreclosure Case prior to sending certain notices to the plaintiffs, the sending of which was a necessary condition precedent to the initiation of mortgage foreclosure proceedings. The first such notice was required by section 20 of the mortgage agreement, and it provided that, before either party could file any judicial action arising out of the mortgage agreement, that party must notify the other party of the alleged breach and afford it a reasonable opportunity to take corrective action. The second notice was required by section 22 of the mortgage agreement, and it provided that, before Astoria Bank could accelerate the sums due on the mortgage following a breach by the plaintiffs, Astoria Bank must give the plaintiffs notice of the default, an opportunity to cure, and notice that the failure to cure may result in acceleration of the sums due, foreclosure by judicial proceedings, and sale of the property.

¶ 5    Count I of the amended complaint alleges that defendant Sterling, through Astoria Bank, beached the terms of the mortgage agreement by filing the Mortgage Foreclosure Case without

first sending the notice required by section 20, and count II alleges that this same action violated the Consumer Fraud Act. Count III alleges that the failure to send the notice required by section 22 before filing the Mortgage Foreclosure Case was a breach of the mortgage agreement, and count IV alleges that this same action violated the Consumer Fraud Act. Finally, count V alleges that the Consumer Fraud Act was violated when the Mortgage Foreclosure Case was filed before the plaintiffs were sent the grace-period notice required by section 15-1502.5 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1502.5 (West 2010)).

¶ 6     The amended complaint describes the procedural history of the Mortgage Foreclosure Case in great detail, although no pleadings or motions from that case are included in the record on appeal in this case. The procedural history significant to this appeal is as follows. Astoria Bank filed the complaint in the Mortgage Foreclosure Case on September 23, 2010. On March 16, 2011, the plaintiffs filed their answer and affirmative defenses. The amended complaint alleges that, in their affirmative defenses, the plaintiffs denied that Astoria Bank or its loan servicer "complied with the conditions precedent" (referring to the conditions precedent of sending the notices required by sections 20 and 22 of the mortgage agreement and the grace-period notice required under the Mortgage Foreclosure Law prior to filing suit).[1]

¶ 7     On June 8, 2011, Astoria Bank filed a motion for summary judgment, which was supported by the affidavit of Mary Przybyla, who attested that Astoria Bank had complied with the necessary conditions precedent to foreclose the mortgage. The plaintiffs thereafter issued a notice of

_____

[1] The original complaint in this case alleged that the plaintiffs had asserted in their affirmative defenses in the Mortgage Foreclosure Case that Astoria Bank "had failed to send them a notice of grievance and an acceleration notice prior to instituting foreclosure proceedings as required under the terms of the Mortgage" and "had failed to send them the grace period notice prior to instituting foreclosure proceedings as required under the Illinois Mortgage Foreclosure Law." The amended complaint is less specific and merely states that the plaintiffs' affirmative defenses denied that Astoria Bank "complied with the aforementioned conditions precedent." The actual affirmative defenses are not included in the record on appeal in this case.

deposition for the person with the most knowledge regarding compliance with the conditions precedent, and in response Astoria Bank produced Edward Bagdon. According to the amended complaint, during his discovery deposition on March 13, 2012, Bagdon admitted "that there was no compliance with the aforementioned conditions precedent" prior to the filing of foreclosure proceedings against the plaintiffs.[2] However, after Bagdon's deposition, Astoria Bank, its loan servicer, and their attorneys maintained in communications with plaintiffs' counsel "that there were other persons who could provide evidence of compliance with the aforementioned conditions precedent." On July 24, 2012, the plaintiffs filed a motion to strike Przybyla's affidavit, contending that her statements in it were in direct contradiction to Bagdon's deposition testimony that there had been no compliance with the conditions precedent. Neither the motion for summary judgment nor the motion to strike Przybyla's affidavit was ever ruled upon, and Astoria Bank ultimately withdrew its motion for summary judgment.

¶ 8    On June 25, 2015, the trial court granted leave for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-11TT (Wilmington Savings), to substitute as plaintiff in the Mortgage Foreclosure Case on behalf of Astoria Bank. That same day, the plaintiffs were granted leave to file an amended answer and amended affirmative defenses that "reiterated and strengthened the position of the [plaintiffs] that there was no compliance with the aforementioned conditions precedent."

¶ 9    On October 21, 2015, Wilmington Savings presented its own motion for summary judgment. It was supported by the affidavit of Cedric Small, which, according to the amended complaint, "contradicted the sworn deposition testimony of Mr. Bagdon from March 13, 2012." Thus, on

---

[2] The original complaint in this case describes that in his deposition testimony on March 13, 2012, "Mr. Bagdon admitted that the notice of grievance, acceleration notice and grace period notice had not been sent to the Smiths prior to Astoria filing foreclosure proceedings against the Smiths."

February 25, 2016, the plaintiffs moved to strike Small's affidavit on this basis. Neither motion was ever ruled upon, as Wilmington Savings later substituted attorneys who, on April 28, 2016, voluntarily withdrew the motion for summary judgment.

¶ 10        On May 19, 2016, the plaintiffs filed their own motion for summary judgment. On August 16, 2016, the trial court conducted an unsuccessful settlement conference. After the settlement conference concluded, Wilmington Savings filed a motion to voluntarily nonsuit the Mortgage Foreclosure Case. On August 19, 2016, the plaintiffs filed a motion for leave to file a counterclaim for breach of contract and violations of the Consumer Fraud Act, based on the failure to provide the requisite notices prior to accelerating the mortgage and filing the Mortgage Foreclosure Case. See *Wilmington Savings Fund Society, FSB v. Smith*, 2017 IL App (2d) 160988-U, ¶ 6.

¶ 11        The amended complaint in this case alleges that, at the August 26, 2016, hearing on the motion to nonsuit, the attorney for Wilmington Savings "admitted that there was no compliance with the aforementioned conditions precedent." This court takes judicial notice that the transcript of that hearing, which is included in the record on appeal in this case, reflects that the attorney stated that Wilmington Savings and its attorneys had "determined that we are unable to provide *** sufficient proof to the court that the grace period notice was sent prior to the initiation of the complaint." See also *id.* ¶ 8.

¶ 12        Over the plaintiffs' objection, the trial court allowed Wilmington Savings to voluntarily nonsuit the Mortgage Foreclosure Case. It declined to rule on the merits of the plaintiffs' pending motion for summary judgment, and it denied that motion for summary judgment and the motion for leave to file a counterclaim as moot. The plaintiffs appealed the trial court's granting of the motion to voluntary nonsuit prior to ruling on their motion for summary judgment and its denying of their motion for leave to file a counterclaim. The judgment was affirmed. *Id.* ¶¶ 21, 25.

¶ 13      On November 13, 2017, the plaintiffs filed their original complaint in the present case against defendant Sterling (as successor to Astoria Bank), Wilmington Savings, Dovenmuehle Mortgage, Inc. (Astoria Bank's loan servicer), Selene Finance, LP (Wilmington Savings' loan servicer), Pierce & Associates d/b/a McCalla Raymer Leibert Pierce, LLC (Astoria Bank's attorneys in the Mortgage Foreclosure Case), and Marinosci Law Group, P.C. (Wilmington Savings' attorneys in the Mortgage Foreclosure Case). The trial court dismissed the plaintiffs' original complaint. The plaintiffs then filed the operative amended complaint.

¶ 14      Defendant Sterling filed a motion to dismiss counts I through V of the amended complaint. It argued that counts I and III for breach of contract should be dismissed, because the only damages that the plaintiffs allege that they suffered as a result of the breach of contract were the attorney fees and legal expenses incurred in defending against the Mortgage Foreclosure Case, which as a matter of law were unrecoverable as damages. It also argued that counts II, IV, and V for violations of the Consumer Fraud Act were barred by the expiration of the 3-year statute of limitation, as the complaint demonstrated that the plaintiffs were aware by the time of Bagdon's deposition on March 13, 2012, that Astoria Bank had not provided them with the requisite notices prior to filing the Mortgage Foreclosure Case against them. The trial court granted defendant Sterling's motion on these bases. It also dismissed all other counts of the amended complaint. The plaintiffs filed a notice of appeal involving only the dismissal of the counts against defendant Sterling.

¶ 15                      II. ANALYSIS

¶ 16                  A. Breach of Contract Counts

¶ 17      Counts I and III of the amended complaint were dismissed pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2018). A motion to dismiss under that section challenges the legal sufficiency of a complaint, based on defects apparent on its face. *Khan v.*

*Deutsche Bank AG*, 2012 IL 112219, ¶ 47. This court's review of an order granting such a motion is *de novo*. *Id.* In doing so, we accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom, construed in the light most favorable to the plaintiffs. *Id.* In resolving such a motion, we may also consider any matters about which judicial notice may be taken. *Id.* A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Id.*

¶ 18     On appeal, the plaintiffs argue that the trial court erred by dismissing the counts for breach of contract on the basis that they failed to allege the existence of recoverable damages. The damages sought by the plaintiffs in these counts were the attorney fees and legal expenses that they had incurred in defending the Mortgage Foreclosure Case. The plaintiffs contend that these attorney fees are recoverable as consequential damages in an action for breach of contract.

¶ 19     The "American rule," which Illinois has long followed, is that each party to litigation bears its own expenses, and a prevailing party may not recover its attorney fees from the losing party unless a statute or contractual provision expressly allows it. *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 17. In this case, the plaintiffs do not contend that any statute or contractual provision expressly allows them to recover attorney fees from defendant Sterling. Further, the plaintiffs acknowledge that they "were not the prevailing party in the foreclosure case," because that case was terminated through a voluntary nonsuit.

¶ 20     Instead, the plaintiffs argue that, if they prevail in this action against defendant Sterling for breach of contract, the attorney fees they incurred in defending the Mortgage Foreclosure Case would properly be awarded as consequential damages. They rely on the principle that a party can recover damages in a breach of contract action where those damages naturally and generally result from the breach, or where those damages were the consequence of special or unusual

circumstances and were foreseeable and within the reasonable contemplation of the parties at the time the contract was entered into. See *United Airlines, Inc. v. City of Chicago*, 2011 IL App (1st) 102299, ¶ 17 (citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 318 (1987)). The plaintiffs contend that attorney fees were foreseeable and reasonably contemplated at the time of contracting in this case. They rely upon the fact that the language in sections 20 and 22 of the mortgage agreement contemplated the possibility of judicial proceedings, that statutory authority exists for an award of attorney fees to a prevailing defendant in a foreclosure action (see 735 ILCS 5/15-1510(a) (West 2010)), and that a defendant sued for foreclosure can reasonably be expected to hire an attorney to defend it.

¶ 21    We reject the plaintiffs' argument that attorney fees can be awarded as damages in the context presented here and conclude the trial court properly dismissed counts I and III. In their claim for breach of contract, the plaintiffs are essentially alleging that defendant Sterling's predecessor in interest, Astoria Bank, improperly involved them in the Mortgage Foreclosure Case by its wrongful conduct of filing that case without first sending them the pre-suit notices required by sections 20 and 22 of the mortgage agreement. However, absent contractual or statutory authority, a plaintiff may not bring an action to recover the attorney fees it incurred in earlier litigation as damages from a defendant who was an opponent in that earlier litigation, on the basis that the defendant's prosecuting or defending of that earlier litigation was wrongful. *Ritter v. Ritter*, 381 Ill. 549, 554-57 (1943); *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 303 (2008). The rule disallowing the recovery of attorney fees expended in prosecuting or defending against a lawsuit is an exception to the general rule that one who commits a wrongful act is liable for all of the ordinary and natural consequences of his act. *Diamond v. General Telephone Co. of Illinois*, 211 Ill. App. 3d 37, 51 (1991); *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 371 (1980).

¶ 22      This principle is distinguishable from the rule that, " 'where the wrongful acts of a defendant involve the plaintiff in litigation *with third parties or place him in such relation with others* as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees.' " (Emphasis added.) *National Wrecking Co. v. Coleman*, 139 Ill. App. 3d 979, 982 (1985) (quoting *Ritter*, 381 Ill. at 554); see also *Nalivaika v. Murphy*, 120 Ill. App. 3d 773, 776 (1983). Under the latter rule, it has been held that where a defendant's breach of contract causes a plaintiff to become involved in litigation with a *third party*, the attorney fees incurred by the plaintiff in such litigation may be recoverable from the defendant as damages. *Bituminous Casualty Corp. v. Commercial Union Insurance Co.*, 273 Ill. App. 3d 923, 931 (1995). However, recovery is not permissible where the fees sought are those the plaintiff incurred in defending itself in earlier litigation in which the defendant was an opposing party. *Goldstein*, 381 Ill. App. 3d at 303.

¶ 23      We have reviewed the cases cited by the plaintiffs, and none stand for the principle that attorney fees incurred in earlier litigation are recoverable as damages in a breach of contract action based on the wrongful initiation or prosecution of that litigation. In *Cokinis v. Maywood-Proviso State Bank*, 81 Ill. App. 3d 1057 (1980), the plaintiffs sued their bank and its attorney for negligently allowing the plaintiffs' beneficial interest in their residence to be sold to third parties at a judicial sale. The plaintiffs incurred attorney fees in connection with a petition they filed to have the sale declared void, and they were allowed to seek the recovery of those fees as damages in their negligence action. *Id.* at 1061-63. The propriety of the plaintiffs' recovery of these fees was not an issue on appeal. However, it appears this would be permissible under the latter rule discussed above, because the negligent acts of the bank and its attorney placed the plaintiffs in

such relation with the third parties who purchased their residence as to make it necessary for the plaintiffs to incur expenses to protect their interest by having the judicial sale set aside. That is not the situation in the present case.

¶ 24    In *Bartlett Bank & Trust Co. v. McJunkins*, 147 Ill. App. 3d 52, 55-56 (1986), the defendants in a foreclosure action filed a counterclaim alleging that the plaintiff bank breached its contract with them by accelerating the due date on the promissory note and filing the foreclosure action against them. The foreclosure action was then voluntarily dismissed, and the cause proceeded to trial on the counterclaim. *Id.* at 55. The court's opinion reflects that the plaintiffs' counterclaim requested attorney fees as compensatory damages and that testimony was presented on the attorney fees paid in defense of the foreclosure action. *Id.* at 56. However, the opinion does not reflect whether the trial court actually allowed the jury to consider these fees as damages, and the court did not decide any issue on appeal involving attorney fees. Thus, nothing about *McJunkis* persuades us that attorney fees can be the basis of damages in this case.

¶ 25    The plaintiffs make several additional arguments that the American rule should not bar their action for fees. First, they argue that the American rule does not apply because they "were not the prevailing party in the foreclosure case." Second, they argue that applying the American rule here would not advance its purpose, which is enabling financially vulnerable parties to assert their legal rights in uncertain litigation by protecting them from the harshness of having to pay their opponents' attorney fees if they lose. See *Sorenson*, 90 Ill. App. 3d at 372. The plaintiffs argue that here, they are the "more vulnerable" party, and defendant Sterling is not the kind of indigent party that the American rule was designed to protect. Finally, they argue that recognizing their claim for fees would not lead to a "litigation feedback loop," but instead it would "merely restore the status quo." Ultimately, we find no merit to any of the arguments advanced by the plaintiffs.

Illinois has long adhered to the American rule that each party to litigation bears its own litigation expenses, regardless of who wins. *State ex rel. Schad*, 2018 IL 122487, ¶ 17. There is no reason to depart from the rule in this case.

¶ 26   The plaintiffs argue that even if this court finds the American rule applies, it should recognize an equitable exception in this case. However, the plaintiffs rely exclusively on federal law for this argument. The plaintiffs have cited no case for the principle that Illinois law allows attorney fees to be awarded under an equitable exception to the American rule, especially as damages in an action at law for breach of contract. We are aware of no Illinois authority that attorney fees may be assessed against a litigation opponent based on equity alone, in the absence of any contractual or statutory authority to do so. *Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*, 2015 IL App (1st) 140088, ¶ 33. We thus reject the plaintiffs' argument.

¶ 27   Finally, we agree with the trial court that the plaintiffs were not without a remedy for Astoria Bank's filing of the Mortgage Foreclosure Case without first sending the pre-suit notices or its continued prosecution of that case once it knew or should have known that it lacked a basis to prevail. Their remedy was to file a motion for sanctions in the Mortgage Foreclosure Case itself, which, if allowed, would have enabled the plaintiffs to recover reasonable attorney fees. Ill. S. Ct. R. 137 (eff. July 1, 2013). The plaintiffs argue that it would have been futile for them to have moved for sanctions in the Mortgage Foreclosure Case because the trial court there was hostile to their position, as demonstrated by the fact that it refused to consider their pending motion for summary judgment before allowing the voluntary nonsuit, and it denied their motion for leave to file a counterclaim. We disagree. We fail to see how these two rulings would indicate such hostility as to render a motion for sanctions futile, if indeed the plaintiffs are correct that Astoria Bank committed "blatant fraud against the court" by "fil[ing] a frivolous lawsuit, [and] then

prosecut[ing] it for six years."

¶ 28                            B. Consumer Fraud Counts

¶ 29        Counts II, IV, and V of the amended complaint were dismissed under section 2-619(a)(5) of the Code of Civil Procedure, which permits involuntary dismissal where "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). When a defendant raises a statute of limitations defense, a plaintiff in response must "provide enough facts to avoid application of the statute of limitations." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 84 (1995). All well-pleaded facts and reasonable inferences are accepted as true for purposes of the motion, but not conclusions of law. *Id.* at 85. Also, the pleadings and supporting documents are interpreted in the light most favorable to the plaintiffs. *Khan*, 2012 IL 112219, ¶ 18. Our review of the trial court's ruling on such motion is *de novo*. *Id.*

¶ 30        The plaintiffs argue that the trial court erred in dismissing the Consumer Fraud Act counts based on its determination that the statue of limitations had expired by the time the plaintiffs filed their complaint on November 13, 2017. The Consumer Fraud Act provides that, with exceptions not applicable to this case, any action for damages "shall be forever barred unless commenced within 3 years after the cause of action accrued." 815 ILCS 505/10a(e) (West 2016). A cause of action "accrues" when facts exist that authorize the bringing of a cause of action. *Khan*, 2012 IL 112219, ¶ 20.

¶ 31        The plaintiffs contend on appeal that their amended complaint adequately pleads that defendant Sterling, through the actions of Astoria Bank, fraudulently concealed the existence of their cause of action until August 26, 2016, when the attorney for Wilmington Savings admitted in court that he could not prove the pre-suit notices had been sent prior to filing the complaint. Therefore, they argue, their claims are timely under section 13-215 of the Code of Civil Procedure,

which provides that, "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2016). Their position is that Astoria Bank fraudulently concealed the existence of their cause of action by: (1) affirmatively representing in the foreclosure complaint that it had sent the notices when it knew they had not been sent; (2) representing after Bagdon's deposition that it could still produce a witness who could provide proof that the notices had been sent; and (3) representing to the trial court that it had proof that the notices were sent only ten days before admitting the opposite in open court.

¶ 32        The concealment of a cause of action under section 13-215 must consist of affirmative acts or representations calculated to lull or induce the plaintiffs into delaying the filing of their claim or preventing them from discovering the claim. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 38. However, section 13-215 will not toll the statute of limitation where the plaintiffs discover the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains to file the claim within the remaining limitation period. *J.S. Reimer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 51.

¶ 33        The fraudulent concealment statute does not apply in this case. The factual basis of the plaintiffs' consumer fraud counts is that Astoria Bank filed the Mortgage Foreclosure Case without first sending them the notices required by sections 20 and 22 of the mortgage agreement and the grace-period notice required by the Illinois Mortgage Foreclosure Law. The allegations of plaintiffs' amended complaint make clear that, at the very latest, they knew or should have known the facts giving rise to this cause of action by March 13, 2012, when Astoria Bank produced Bagdon for deposition, and he "admitted, under oath, that there was no compliance with the

aforementioned conditions precedent" of sending the requisite notices prior to filing the complaint in the Mortgage Foreclosure Case. Thus, although Astoria Bank's attorney may have continued after that time to maintain that it could still produce a witness who could testify that the notices were sent, it could not be fraudulent concealment because the plaintiffs had sufficient notice that this may not in fact be true. Because the plaintiffs knew or should have known these facts more than three years prior to the filing of the complaint in the Mortgage Foreclosure Case, section 13-215 cannot serve as a basis for extending the limitation period.

¶ 34 The plaintiffs also rely on the discovery rule to argue that the statute of limitation is tolled. They argue that, although their belief that they had not received the notices was "a sufficient evidentiary basis to rebut the presumption that the notices were sent and conduct discovery on the issue," they lacked "actual knowledge of their cause of action." They contend that, "[w]hile it may fairly be said that [the plaintiffs] suspected that they had an actionable claim by March 13, 2012, they had no opportunity to conduct the discovery needed to ascertain the claim's validity." They argue that filing a counterclaim after March 13, 2012, "would have subjected the [plaintiffs] to sanctions" based on the representations of Astoria Bank after that date that it had a different witness who would testify to the sending of the notices, and until it came forward with that witness, the plaintiffs "could do nothing but wait."

¶ 35 The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Henderson Square Condominium Ass'n*, 2015 IL 118139, ¶ 52 (citing *Khan*, 2012 IL 112219, ¶ 20). At the point when a party knows or reasonably should know that the injury was wrongfully caused, the party is under an obligation to inquire further to determine whether an actionable wrong has been committed. *Id.* For purposes of the discovery rule, knowledge that an injury is

"wrongfully caused" is not equated with knowledge of the existence of a cause of action. *Khan*, 2012 IL 112219, ¶ 22. Rather, " 'when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed.' " *Id.* ¶ 21 (quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981)).

¶ 36 As discussed above, it is undisputed from the allegations of the amended complaint that the plaintiffs knew or should have known of the factual basis of their consumer fraud claims no later than the date of Bagdon's deposition, when Astoria Bank produced him as its most knowledgeable witness on the issue of the sending of pre-suit notices, and he testified that the notices had not been sent prior to the filing of the suit. Given that they obtained this testimony, we find no merit to their argument that they were denied discovery concerning the actual validity of their consumer fraud claim or that they "could do nothing but wait" until Astoria Bank produced another witness. We see no reason why Bagdon's testimony would not have given the plaintiffs a reasonable basis at that time to raise their claim. Under the discovery rule, the statute of limitations began to run no later than March 13, 2012, and the plaintiffs' cause of action under the Consumer Fraud Act was untimely as it was not filed until November 13, 2017.

¶ 37 The plaintiffs also argue for the equitable tolling of the limitation period until September 15, 2017, which was the date that the appellate court entered its order in the Mortgage Foreclosure Case, affirming the trial court's denial of the plaintiffs' motion for leave to file their counterclaim. See *Wilmington Savings Fund Society*, 2017 IL App (2d) 160988-U. They argue that they "actively and diligently" sought to present their claims in the Mortgage Foreclosure Case but were denied the ability to do so. They cite their motion for leave to file a counterclaim, their motion to reconsider the denial of that motion, their appeal of that denial, their petition for leave to appeal to

the Illinois Supreme Court, and ultimately, when none of those were successful, the filing of their complaint in this case.

¶ 38       "Equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000). The application of the doctrine of equitable tolling requires a showing of due diligence on the part of a plaintiff seeking to invoke it. *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117, ¶ 20.

¶ 39       Here, as addressed above, it was no later than March 13, 2012, that the plaintiffs knew or should have known of the factual basis of their consumer fraud claim. However, they did not file their motion for leave to file a counterclaim asserting it until August 19, 2016, after Wilmington Savings had filed its motion to voluntarily nonsuit the Mortgage Foreclosure Case. We do not consider this delay of over four years to show diligence on the part of the plaintiffs. Thus, we see no basis to apply the doctrine of equitable tolling to the limitations period in this case.

¶ 40                                    III. CONCLUSION

¶ 41       For the foregoing reasons, we affirm the judgment of the trial court dismissing the counts of the plaintiffs' amended complaint against defendant Sterling National Bank.

¶ 42       Affirmed.